IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 12, 2020

**CHRISTOPHER LEE WILLIAMS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County
No. 2014-D-3138    Angelita Blackshear Dalton, Judge[1]**

_____

**No. M2019-01195-CCA-R3-PC**

_____

The Petitioner, Christopher Lee Williams, appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief, seeking relief from his convictions of aggravated kidnapping, reckless endangerment, and domestic assault, and resulting effective ten-year sentence.  On appeal, the Petitioner claims that he received the ineffective assistance of trial counsel.  Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

Jesse Pratt Lords, Nashville, Tennessee, for the appellant, Christopher Lee Williams.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Amy M. Hunter, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

In the early morning hours of September 8, 2014, the Petitioner and his live-in girlfriend got into an argument, and the Petitioner assaulted her.  State v. Christopher Lee Williams, No. M2016-00568-CCA-R3-CD, 2017 WL 1063480, at *1 (Tenn. Crim. App. at Nashville, Mar. 21, 2017), perm. app. denied, (Tenn. July 18, 2017).  After the assault, the Petitioner repeatedly prevented the victim from leaving their apartment.  Id. at *5.  Later

---

[1] Judge Dalton did not preside over the Petitioner's trial or sentencing hearing.

that morning, the victim went to work to pick up her paycheck. See id. at *2. Upon seeing the victim's injuries, her manager encouraged her to go to a hospital. Id. The victim ultimately agreed to go to a hospital, and two coworkers accompanied her to the emergency room at Vanderbilt Hospital. See id. The victim spoke with several police officers at the hospital, and someone photographed her injuries. Id. at *3.

In December 2014, the Davidson County Grand Jury indicted the Petitioner for aggravated assault by strangulation in count one, especially aggravated kidnapping in which the victim suffered serious bodily injury in count two, and domestic assault causing bodily injury in count three. The Petitioner went to trial in November 2015.

At trial, the victim testified that during the assault, the Petitioner hit her head and face. See id. at *1-2. She also testified that he pushed her head into the floor, which prevented her from taking a full breath for three to five minutes. Id. at *2. Dr. Tom Deering, a forensic pathologist from the Davidson County Medical Examiner's Office, testified that the State asked him to review the victim's medical records. He described the victim's injuries "as a facial contusion, a minor closed head injury, a cervical neck strain, a bruised coccyx, and a small eye hemorrhage." Id. at *3. However, he said the records did not show evidence of strangulation or fractures. Id.

The Petitioner did not present any proof, and the jury convicted him of reckless endangerment, a Class A misdemeanor, as a lesser-included offense of aggravated assault; aggravated kidnapping, a Class B felony, as a lesser-included offense of especially aggravated kidnapping; and domestic assault, a Class A misdemeanor, as charged in the indictment. After a sentencing hearing, the trial court ordered that the Petitioner serve ten years at one hundred percent release eligibility for aggravated kidnapping and concurrent sentences of eleven months, twenty-nine days for reckless endangerment and domestic assault for a total effective sentence of ten years in confinement.

The Petitioner filed a direct appeal of his convictions, claiming that his dual convictions of aggravated kidnapping resulting in bodily injury and domestic assault based on bodily injury were improper and that the trial court failed to consider his voluntary release of the victim as a mitigating factor during sentencing. See id. at *3, 5. This court affirmed the Petitioner's convictions and effective ten-year sentence. See id. at *6-7.

After our supreme court denied the Petitioner's application for permission to appeal, he filed a timely pro se petition for post-conviction relief, claiming that he received the ineffective assistance of trial counsel. The post-conviction court appointed counsel, and counsel filed an amended petition, claiming that trial counsel was ineffective because trial counsel failed to meet with the Petitioner and keep him informed about the evidence against him, failed to provide him with discovery, failed to review discovery with him, failed to

- 2 -

discuss pretrial motions with him, and failed to review the State's notice of enhanced punishment with him. The amended petition also alleged ineffective assistance because trial counsel failed to subpoena the Vanderbilt doctor who treated the victim and because trial counsel allowed Dr. Deering to testify about the Vanderbilt doctor's report.

At the evidentiary hearing, the Petitioner testified that trial counsel was appointed to represent him and that they only met when the Petitioner appeared in court. They did not discuss the Petitioner's case, the Petitioner never received discovery, and trial counsel never reviewed the State's evidence with the Petitioner. They also never discussed trial strategy or trial counsel's preparation for trial. Trial counsel was the Petitioner's second attorney because the Petitioner "dismissed the previous attorney for the same reason."

The Petitioner testified that he sent "countless" letters to trial counsel, asking him to file motions such as a motion for a speedy trial. However, the Petitioner never received any letters from trial counsel. Trial counsel did not review the State's notice of enhanced punishment with the Petitioner, and the Petitioner did not even know the State had filed the notice. The Petitioner wanted to testify at trial, but trial counsel claimed that the Petitioner "didn't have to because the evidence that was against the claims was overwhelming." The Petitioner wanted to testify anyway, but trial counsel told the Petitioner that he was not going to call the Petitioner to the stand. The Petitioner did not have any input as to trial strategy. He said that he tried to give trial counsel some ideas to argue but that trial counsel "ignored it." The Petitioner acknowledged that if trial counsel had communicated with him, he would have been able to assist trial counsel with his defense.

On cross-examination, the Petitioner testified that he also wanted trial counsel to file a motion to suppress pictures of the victim's injuries. He acknowledged that the trial court advised him of his right to testify and that he told the trial court he did not want to testify. He said, though, that trial counsel "instructed" him not to testify and that he did what trial counsel said because he thought trial counsel "would present the case like it was supposed to be."

Trial counsel testified for the State that he was appointed to represent the Petitioner after the Petitioner's first attorney was relieved from the case. Trial counsel said that he thought he was appointed about one month before the Petitioner went to trial; therefore, he was "on a very tight course in preparing." Trial counsel "brought in" one of his law partners to help him with the case, and they were prepared for trial because they "made time" for trial preparation. Trial counsel said that he and his law partner "spent consecutive days with little to no sleep preparing for the trial" and that their strategy "hinged on a case that I think [had] just come out of the Court of Appeals, State v. Crawford, I believe." Trial counsel said his law partner "worked on that issue in conjunction with . . . the attorney who argued the case that we relied upon."

Trial counsel testified that by the time he got involved in the Petitioner's case, the State already had turned over discovery materials to the defense. When trial counsel first met with the Petitioner, the Petitioner had a copy of discovery. Trial counsel said the Petitioner brought the discovery materials to every court appearance "because he would have it rolled up in his hand." Trial counsel and the Petitioner discussed discovery each time they met. The Petitioner claimed the victim was lying and "absolutely had a very good understanding of the facts in evidence that the State had against him."

Trial counsel testified that he prepared witnesses for direct and cross-examination testimony. Trial counsel negotiated with the State about a plea, and the State offered for the Petitioner to plead guilty in exchange for a sentence of six years and one month to serve in confinement. However, the Petitioner rejected the offer. Trial counsel said that the Petitioner wanted to go to trial and that the Petitioner was "very confident that he could get this case beat." Trial counsel stated that he did not remember the Petitioner asking him to file a motion to suppress photographs of the victim's injuries and that he did not know of a basis for suppressing the photographs. Trial counsel said he did not subpoena the Vanderbilt doctor who signed the victim's medical records because the doctor had "just [overseen] a medical student's examination [of the victim]" and did not have any independent knowledge about the victim's case. Moreover, trial counsel did not want the doctor to testify because "it was clear from the medical records that they believed she was strangled . . . [and] abused." Instead, trial counsel allowed Dr. Deering, "who was completely neutral," to read the victim's medical records into evidence.

Trial counsel testified that the victim made statements at the Petitioner's preliminary hearing that contradicted what she told doctors, what she told the police, and what she said at trial. Therefore, trial counsel used her preliminary hearing testimony to cross-examine her. Trial counsel said that he paid for the preliminary hearing transcript "out of [his] own pocket" because he did not have time to get court approval for the transcript.

At the conclusion of trial counsel's direct testimony, the State asked if there was anything else he wanted the post-conviction court to know about his work on the Petitioner's case. Trial counsel said he thought the State "overcharge[ed]" the Petitioner based on the facts. He also stated that he was a "newer" attorney who had been practicing only three years at the time of the Petitioner's trial and that he had "wanted to do an extremely good job" for the trial court. He said that he went "out of [his] way" to get other attorneys to help him with the Petitioner's case for free, that he "paid out of pocket," that he "sacrificed time" with his family, and that he slept at his office to prepare for the Petitioner's trial.

On cross-examination, trial counsel acknowledged that he thought he had only four weeks to prepare for trial. At that point, the post-conviction court noted that trial counsel was appointed to represent the Petitioner in April 2015 and that the Petitioner went to trial in August 2015. Trial counsel clarified that he had four months, not four weeks, to prepare. Trial counsel acknowledged that he could have argued in a motion to suppress that the photographs of the victim's injuries were more prejudicial than probative. He said, though, that he did not think such an argument would have been successful because the photographs were "very necessary" for the State's case. The Petitioner thought this case was "just a simple assault." Trial counsel said that he reviewed discovery with the Petitioner, that "there was a small window in which [their] conversations were productive," and that the Petitioner "was very knowledgeable about the case and the charges."

The post-conviction court filed a written order denying the petition for post-conviction relief. In the order, the post-conviction court accredited trial counsel's testimony that he met with the Petitioner in court, that the Petitioner brought discovery materials with him to every meeting, and that the Petitioner was very knowledgeable about the case. The post-conviction court also accredited trial counsel's testimony that he did not think a motion to suppress the victim's photographs would have been successful. The post-conviction court concluded that, in any event, the Petitioner failed to show that a motion to suppress would have been granted. Finally, the post-conviction court accredited trial counsel's testimony that he did not subpoena the Vanderbilt doctor who treated the victim because the doctor did not have any independent recollection of treating her and trial counsel's testimony that he strategically decided not to call the doctor so that the doctor could not testify that the victim had been abused.

## II. Analysis

The Petitioner claims that he received the ineffective assistance of counsel because trial counsel failed to communicate adequately with him. Specifically, the Petitioner contends that trial counsel failed to meet with him and discuss the case against him, did not allow him to participate in his own defense, did not provide him with a copy of discovery, did not allow him to assist in preparing for trial, and never discussed a trial strategy with him. The State argues that the post-conviction court properly denied relief. We agree with the State.

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Turning to the instant case, the post-conviction court accredited trial counsel's testimony that he met with the Petitioner when the Petitioner came to court, that the Petitioner had a copy of the discovery materials at every meeting, and that the Petitioner was knowledgeable about his case. Although the Petitioner contends that trial counsel did not discuss a trial strategy with him, the Petitioner has not suggested what strategy trial

counsel should have used to change the outcome of his case. Accordingly, we agree with the post-conviction court that the Petitioner has failed to demonstrate that trial counsel was deficient or that the Petitioner was prejudiced by any deficiency.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE